UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LESLIE GAIL EATON COLLINGS,

                          Plaintiff,

v.                                                          5:24-CV-0534
                                                            (GTS/ML)
THE STATE UNIVERSITY OF NEW YORK
AT CORTLAND; and MARK PRUS, in his
personal capacity,

                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LESLIE GAIL EATON COLLINGS
  Plaintiff, *Pro Se*
9 Cedar Street
Cortland, NY 13045

HON. LETITIA A. JAMES                            AIMEE COWAN, ESQ.
NEW YORK STATE ATTORNEY GENERAL                  Assistant Attorney General
  Counsel for Defendants
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Leslie Gail Eaton Collings

("Plaintiff") against the State University of New York at Cortland ("SUNY Cortland") and Mark

Prus (collectively, "Defendants"), are Defendants' motions to dismiss Plaintiff's Complaint for

failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 12, 35.) For the reasons

set forth below, Defendants' motions are granted, Plaintiff's federal claims are dismissed with

prejudice, and Plaintiff's state law claims are dismissed without prejudice to refiling in state court.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts seven claims: (1) a claim of discrimination based on her sex and age in violation of Title VII;[1] (2) a claim of a hostile work environment related to her sex in violation of Title VII; (3) a claim of retaliation for reporting discrimination and a hostile work environment in violation of Title VII;[2] (4) a claim of discrimination and retaliation based on her race and/or national origin in violation of the New York Human Rights Law ("NYSHRL"); (5) a claim of breach of implied contract in violation of New York law; (6) a claim of intentional infliction of emotional distress ("IIED") in violation of New York law; and (7) a claim of negligence and/or gross negligence in violation of New York law.  (Dkt. No. 1.)

### B.     Parties' Briefing on Defendants' Motions to Dismiss

#### 1.     Defendant SUNY Cortland's Motion to Dismiss

##### a.     Defendant SUNY Cortland's Memorandum of Law

Generally, in its motion to dismiss Plaintiff's Complaint, Defendant SUNY Cortland makes seven arguments.  (Dkt. No. 12, Attach. 1.)  First, it argues that Plaintiff's Title VII

---

[1]     Plaintiff also alleges that she belongs to other protected classes based on her race and marital status, but she does not actually allege that Defendants discriminated against her on the basis of any of those attributes related to her Title VII claim.  (Dkt. No. 1, at ¶¶ 25-32.)

[2]     Plaintiff includes within her allegations related to this cause of action that she "was treated differently from other non-disabled employees."  (Dkt. No. 1, at ¶ 39.)  This allegation does not appear to pertain to Plaintiff's retaliation claim related to her complaints of discrimination and hostile work environment, which are based on her sex and potentially age. Plaintiff does not allege facts regarding the nature of any discrimination based on disability.

discrimination claim must be dismissed for the following reasons: (a) because of timeliness requirements, Plaintiff cannot sustain a claim related to any alleged actions that took place before July 19, 2022, based on the date she filed her complaint with the New York State Division of Human Rights ("NYSDHR"); (b) to the extent such claims were implied, Plaintiff cannot sustain a claim under Title VII based on her age or marital status, because Title VII does not protect such categories, and, as to marital status, she has not alleged how she was discriminated against as a married woman sufficient to satisfy a "sex-plus" claim; and (c) Plaintiff has not pled facts to plausibly suggest discrimination based on either race or sex because she has not identified any comparators who were similarly situated to her. (*Id.* at 11-17.)

Second, Defendant SUNY Cortland argues that Plaintiff's Title VII hostile work environment claim must be dismissed because the actions she alleges Defendants took against her do not rise to the required level of severity. (*Id.* at 18-20.)

Third, Defendant SUNY Cortland argues that Plaintiff's Title VII retaliation claim must be dismissed because none of the actions allegedly taken against her by Defendants rise to the level of a materially adverse action. (*Id.* at 20-23.)

Fourth, Defendant SUNY Cortland argues that Plaintiff's claim pursuant to the NYSHRL must be dismissed because Defendant SUNY Cortland is an agency of the State and therefore immune from suit for such claim. (*Id.* at 23-24.)

Fifth, Defendant SUNY Cortland argues that Plaintiff's claim for breach of contract should also be dismissed on the basis of the doctrine of sovereign immunity under the Eleventh Amendment to the U.S. Constitution. (*Id.* at 24-25.)

Sixth, Defendant SUNY Cortland argues that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because such claim is barred given that Defendant SUNY Cortland is a government entity. (*Id.* at 26.)

Seventh, Defendant SUNY Cortland argues that Plaintiff's negligence claims should also be dismissed on the basis of the doctrine of sovereign immunity. (*Id.* at 26-27.)

### b.     Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant SUNY Cortland's motion, Plaintiff makes seven arguments. (Dkt. No. 21.) First, Plaintiff argues that her Title VII claims are not time-barred because the Equal Opportunity Employment Commission ("EEOC") provided her with a right-to-sue notice. (*Id.* at 6.)

Second, Plaintiff argues that she has sufficiently stated a claim for discrimination under Title VII based on her sex and marital status because she has alleged facts sufficient to plausibly suggest a prima facie case as to discrimination, and, specifically as to her marital status, that her allegations provide fair notice of a sex-plus claim. (*Id.* at 6-9.)

Third, Plaintiff argues that she has properly pled a claim for disability discrimination under the Americans with Disabilities Act ("ADA") because she has alleged facts plausibly suggesting that she requested a reasonable accommodation, but that those accommodations were changed without her consent, which impacted her ability to perform her job duties. (*Id.* at 9-10.)

Fourth, Plaintiff argues that she has stated a sufficient claim for hostile work environment. (*Id.* at 10-11.)

4

Fifth, Plaintiff argues that she has stated a sufficient claim for retaliation because she has pled the existence of a retaliatory hostile work environment through various actions taken by Defendant SUNY Cortland and its employees (*Id.* at 11-12.)

Sixth, Plaintiff acknowledges that her state law claims are barred against Defendant SUNY Cortland because of the doctrine of sovereign immunity.  (*Id.* at 12-13.)

Seventh, Plaintiff requests throughout her opposition memorandum of law that she be permitted to amend her Complaint if the Court finds it deficient in any respect.  (*See generally* Dkt. No. 21.)

### c.    Defendant SUNY Cortland's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant SUNY Cortland makes six arguments.  (Dkt. No. 33.)  First, Defendant SUNY Cortland argues that the Court should not construe the Complaint according to the more lenient standards applicable to *pro se* plaintiffs because she was represented by counsel at the time the Complaint was filed.  (*Id.* at 6.)

Second, Defendant SUNY Cortland argues that Plaintiff's Title VII discrimination claim should be dismissed because (a) Plaintiff has not opposed its argument that all actions taken prior to July 19, 2022, are time-barred, (b) she has not opposed dismissal of any age-discrimination claim pursuant to Title VII, (c) she has not alleged facts to sufficiently state a sex-plus claim based on her status as a married woman, and (d) she has not sufficiently pled claims based on race or gender given that she has not identified any similarly situated comparators.  (*Id.* at 7-9.)

Third, Defendant SUNY Cortland argues that Plaintiff has not pled a claim for disability discrimination under the ADA because she does not assert any claim under that Act, and that,

even if the Court were to construe the Complaint as asserting such a claim, it would be barred by the doctrine of sovereign immunity as to Defendant SUNY Cortland. (*Id.* at 9-10.)

Fourth, Defendant SUNY Cortland argues that Plaintiff's hostile-work-environment claim should be dismissed because she has not shown that the alleged conduct rose to the required level of severity. (*Id.* at 11-13.)

Fifth, Defendant SUNY Cortland argues that Plaintiff's Title VII retaliation claim should be dismissed because (a) she has not sufficiently pled a hostile work environment to serve as an adverse action, and (b) she has not pled any other qualifying adverse action. (*Id.* at 13-15.)

Sixth, Defendant SUNY Cortland argues that Plaintiff's state law claims should be dismissed because Plaintiff has conceded that the doctrine of sovereign immunity bars such claims against it. (*Id.* at 15.)

### 2.    Defendant Prus' Motion to Dismiss

#### a.    Defendant Prus' Memorandum of Law

Generally, in his motion to dismiss Plaintiff's Complaint, Defendant Prus makes five arguments. (Dkt. No. 35, Attach. 1.) First, Defendant Prus argues that Plaintiff's Title VII claims should be dismissed against him because individuals are not subject to liability under Title VII. (*Id.* at 8.)

Second, Defendant Prus argues that Plaintiff's claims pursuant to the NYSHRL should be dismissed for the following reasons: (a) the NYSHRL does not permit direct liability against individual employees, only employers, and Plaintiff does not, and cannot, allege that Defendant Prus was her employer; (b) to the extent she intended to assert aider-abettor liability against Defendant Prus, such a claim must fail because Plaintiff cannot establish the requisite liability of

6

Defendant SUNY Cortland (a prerequisite to succeeding on an aider-abettor claim) given that sovereign immunity requires the dismissal of the NYSHRL direct liability claim against Defendant SUNY Cortland; and (c) even if the Court finds that an aider-abettor claim can proceed regardless of the doctrine of sovereign immunity finding, Plaintiff has not alleged facts to plausibly suggest that Defendant Prus discriminated against her (or engaged in retaliation for reports of discrimination), especially given that Plaintiff has specifically alleged that the discrimination was based on her race or national origin and not any other protected characteristic. (*Id.* at 8-11.)

Third, Defendant Prus argues that Plaintiff's breach-of-contract claim should be dismissed because Plaintiff has not alleged that Defendant Prus was a party to her contract with Defendant SUNY Cortland. (*Id.* at 12-13.)

Fourth, Defendant Prus argues that Plaintiff's claim for IIED should be dismissed because the behavior in which Defendant Prus allegedly engaged is not sufficiently outrageous as a matter of law to state such a claim. (*Id.* at 13-15.)

Fifth, Defendant Prus argues that Plaintiff's negligence claims should be dismissed because allegations of employment discrimination cannot be turned into a tort claim. (*Id.* at 15.)

### b. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Prus' motion, Plaintiff makes five arguments. (Dkt. No. 37.) First, Plaintiff concedes that Defendant Prus cannot be held liable under Title VII. (*Id.* at 6.)

Second, Plaintiff argues that she adequately pled her claim for a violation of the New York State Human Rights Law because (a) her Complaint makes clear that the relevant conduct

7

involved discrimination based on sex, marital status, and disability, (b) she has alleged she suffered various adverse actions, (c) she has alleged that Defendant Prus aided and abetted this conduct by intimidating her, personally discriminating against her, and "turning a blind eye" to discrimination by Plaintiff's colleagues, and (d) her claim cannot be dismissed on the basis of a finding that Defendant SUNY Cortland has immunity given that such a finding does not reach the merits of liability.  (*Id.* at 6-11.)

Third, Plaintiff argues that she has adequately pled her claim for breach of contract against Defendant Prus because the Collective Bargaining Agreement, counseling procedures from the Governor's Office, the College Handbook, and state and federal anti-discrimination laws constitute an implied contract, and Defendant Prus' actions in failing to follow procedure and forcing her to adhere to a counseling memorandum that caused her to be treated in an unfair and discriminatory manner constitutes a breach of that implied contract.  (*Id.* at 11-12.)

Fourth, Plaintiff argues that she has adequately pled her claim for IIED because she suffered emotional and reputational harms across a span of fifteen years as a result of Defendant Prus' conduct, which included directing the denial of her discrimination complaint for false reasons and ignoring harassment and discrimination against Plaintiff by her supervisor and coworkers.  (*Id.* at 13-14.)

Fifth, Plaintiff requests throughout her memorandum, and most specifically related to her NYSHRL claim, to amend the Complaint if the Court finds any of her claims are insufficiently pled.  (*See generally* Dkt. No. 37.)

### c.    Defendant Prus' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant Prus makes five arguments. (Dkt. No. 40.) First, Defendant Prus argues that Plaintiff's Title VII claims must be dismissed because she concedes he cannot be held liable under that statute, and there is no cause of action for aiding or abetting under Title VII. (*Id.* at 6.)

Second, Defendant Prus argues that Plaintiff's claim under the NYSHRL should be dismissed because (a) Plaintiff has not argued that Defendant Prus is an employer and thus he cannot be directly liable, (b) Plaintiff's Complaint explicitly asserts this claim only as to race and national origin and has not included any factual allegations to plausibly suggest any such discrimination, and (c) to the extent the Court could construe this claim as being based on sex, marital status, or disability, she still has failed to allege that the actions allegedly taken were actually based on those characteristics (*Id.*at 6-8.)

Third, Defendant Prus argues that Plaintiff's claim for breach of implied contract should be dismissed because, in addition to the fact that much of Plaintiff's argument rests on allegations that are not in the Complaint, she has not alleged facts to plausibly suggest that any of the sources of rights she mentions constitute contracts, much less that Defendant Prus specifically was a party to any of those agreements such that he could be considered bound to a contractual obligation. (*Id.* at 8-10.)

Fourth, Defendant Prus argues that Plaintiff's claim for IIED should be dismissed because (a) she again relies on facts not in the Complaint, and (b) those facts, even if considered, still do not suggest outrageous conduct. (*Id.* at 10-12.)

Fifth, Defendant Prus argues that Plaintiff's negligence claims should be dismissed because Plaintiff fails to oppose the grounds raised in his initial memorandum of law. (*Id.* at 12.)

9

## II.    GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the

11

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal

12

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

## III.    ANALYSIS

---

[3]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .  Where a document is not
incorporated by reference, the court may nevertheless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

A.    **Whether Plaintiff Has Stated a Claim Pursuant to Title VII**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1.a and c, and I.B.2.a and c, of this Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, Defendants are correct that Plaintiff cannot assert a claim under Title VII against Defendant Prus because that statute does not create liability for violations against individuals.  *See Yerdon v. Poitras*, 120 F.4th 1150, 1156 (2d Cir. 2024) (noting that Title VII of the Civil Rights Act does not permit individual liability when analogizing an identical limitation into Title I of the ADA); *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) ("Individuals are not subject to liability under Title VII.").  As a result, to the extent Plaintiff intended to assert such a claim against Defendant Prus, that claim must be dismissed.

Defendant SUNY Cortland, however, can be sued under Title VII.  As an initial matter, Plaintiff's argument that the fact that the EEOC provided her with a right-to-sue notice means those claims are timely has no merit.  (Dkt. No. 21, at 6.)  The copy of the right-to-sue notice that is attached to the Complaint shows that the EEOC did not make any explicit finding regarding timeliness, and also specifically states that "[t]he EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge."  (Dkt. No. 1, Attach. 3, at 1.)  In any event, even if the EEOC had explicitly found that Plaintiff's claims were timely (which it did not), the Court is not bound by the EEOC's conclusions.  *See Shin v. NBC Universal Media, LLC*, 23-CV-10996, 2025 WL 438297 at *7 n.10 (S.D.N.Y. Feb. 7, 2025) (noting that "the Court is not bound by the EEOC's timeliness findings").

14

A common requirement of Plaintiff's Title VII claims of discrimination and hostile work environment is that she must plausibly allege that the actions taken against her were related to a protected characteristic. As an initial matter, Plaintiff has variously alleged (or her Complaint could be liberally construed as alleging)[4] that she faced discriminatory conduct from Defendants on the basis of sex, religious belief, race, age, marital status, and disability. (Dkt. No. 1, at ¶¶ 3, 8, 25-27, 31, 34, 39, 45.) However, when considering the allegations in both the Complaint and Plaintiff's NYSDHR complaint (which the Court finds to be integral to, and incorporated by reference in, the Complaint), the only categories for which she provides any remotely cognizable question of plausibility are sex, marital status, and disability; she does not specify what her religious beliefs are, much less that Defendants acted discriminatorily related to them;[5] and she mentions she is white, but does not allege, beyond a legal conclusion, that Defendants acted against her because of her race; and she mentions her age, but, again, does not allege that Defendants' actions were in any way related to her age other than to allege vaguely that younger employees were treated better.[6] Out of the three categories for which Plaintiff has provided relevant allegations, Title VII applies only to sex. *See* 42 U.S.C. § 2000e-2 (a)(1) (indicating

---

[4]    The Court notes that *all* complaints must be construed liberally. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001) ("In making this assessment [of the pleading sufficiency of a complaint], we must . . . construe the complaint liberally.") (internal quotation marks omitted).

[5]    The inclusion of a reference to religious beliefs appears to be an error based on even a liberal construction of all of the allegations in her Complaint and the NYSDHR complaint.

[6]    Again, having considered the full context of Plaintiff's Complaint and NYSDHR complaint, the specification that her Title VII discrimination and NYSHRL claim in particular are premised on racial discrimination appears to be an erroneous oversight by Plaintiff's previous counsel when drafting the Complaint.

that Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin). As a result, to the extent Plaintiff has asserted discrimination, retaliation, or hostile work environment claims pursuant to Title VII on a basis that is not covered by that statute, those aspects of Plaintiff's claims must be dismissed.[7] The only relevant protected characteristic at issue here for the Title VII claims is therefore sex, including a sex-plus consideration of her status as a married woman.

### 1.    Discrimination

"[F]or a discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Buon*, 65 F.4th at 79 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 [2d Cir. 2015]). An adverse employment action, for the purposes of a discrimination claim, is "a 'materially adverse change' in the terms and conditions of employment." *Buon*, 65 F.4th at 79 (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 [2d Cir. 2004]). "'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . .

---

[7]    The Court declines to read parallel claims under the Age Discrimination in Employment Act ("ADEA") and the ADA into the Complaint related to her assertions of age or disability discrimination. As was already noted previously, although Plaintiff is currently proceeding *pro se* in this action, she was represented by counsel when the Complaint was filed, and the Complaint is indeed signed by her former counsel. (Dkt. No. 1.) Because that Complaint specifically asserts the federal claims under Title VII, those are the only federal claims the Court will consider here.

unique to a particular situation.'"  *Buon*, 65 F.4th at 79 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 [2d Cir. 2003]).

As Defendants argue in their motions, claims brought pursuant to Title VII are required to meet certain conditions precedent to filing in federal court, and must adhere to certain time limits.  Specifically, in New York State, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") or NYSDHR within 300 days of the alleged discriminatory or retaliatory conduct.  *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024).  Discrete adverse events that occurred more than 300 days before that complaint are time-barred and cannot constitute a basis for a plaintiff's claim of discrimination or retaliation.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (noting that discrete retaliatory or discriminatory acts occur on the day they happen and are not actionable if they occur outside of the relevant time period [which is 300 days in New York], "even when they are related to acts alleged in timely filed charges").  Here, Plaintiff alleges in her Complaint that she filed the NYSDHR complaint on or about May 15, 2023, a fact confirmed by the copy of that complaint provided by Defendant SUNY Cortland.  (Dkt. No. 1, at ¶ 5; Dkt. No. 12, Attach. 3, at 2.)  As a result, Plaintiff must have identified an adverse action occurring on or after July 19, 2022, in order to state a claim for discrimination (or, as will be discussed later, retaliation); any alleged discrete adverse actions occurring before that date are time-barred and cannot provide the basis for her claim.

Plaintiff's Complaint itself does not specifically allege any timely conduct.  She alleges that she was (a) falsely accused of workplace bullying in October 2021, after which she was "unfairly targeted and blamed by Defendants for systemic performance issues," (b) requested

reasonable accommodations for her disability but had her accommodations changed without her consent, and (c) was subjected to a counseling memorandum related to "issues that were not of her making." (Dkt. No. 1, at ¶¶ 16-24.) These allegations do not plausibly suggest any sort of adverse action on or after July 19, 2022, particularly as she has not identified when most of these actions occurred. Her NYSDHR complaint identifies the following allegations from the relevant time period: (a) on August 1, 2022, Psychology Department Chair Craig Foster distributed the Department Annual Report without including any mention of an activism award Plaintiff had received, and the Report is how "administration learns about faculty performance"; (b) on August 5, 2022, Foster distributed the Spring 2023 course schedule wherein Plaintiff was scheduled for a M/W/F courseload (despite the fact her accommodations required a stable T/Th schedule) and assigned for a class she had previously explained she was not prepared to teach; (c) on October 13, 2022, Foster required her to justify her qualifications before he would sign a routing slip related to a grant for which she had already been approved; and (d) from August through December 2022, Foster "periodically" sent her emails about complaints from students that she was not adequately replying to their requests for assistance, asserted that she had a performance problem, and attempted to meet with her. (Dkt. No. 12, Attach. 3, at 10-11.)

None of these alleged actions taken against her by Foster rise to the level of an adverse employment action that constituted a materially adverse change to the terms and conditions of her employment. Omitting her achievement from the Annual Report, asking her justify her qualifications related to a grant slip, and sending her emails about student complaints do not appear to have affected the terms and conditions of her employment at all. The setting of a course schedule that contradicts her alleged ADA accommodations creates a closer question, but

18

Plaintiff's allegations still fail to show any tangible negative effect to her employment. Specifically, she alleges that, although she was informed of the schedule on August 5, 2022, she did not mention it to anyone (and specifically "waited for [Dean of Arts and Sciences R. Bruce] Mattingly to review the course assignments, hoping the problem would be corrected" because she was "afraid to complain" after previous issues with Defendants), and in fact waited until the course schedule was published in October 2022 to contact her ADA Coordinator to try to have the issue fixed. (Dkt. No. 12, Attach. 3, at 10-11.) However, she also alleges that, after several follow-up emails in October, "the course schedule was fixed," with the only alleged effect being reduced student enrollment due to the late changes. (*Id.*) There is no indication that such changes occurred after the Spring 2023 semester had begun (i.e., no indication that Plaintiff had actually been required to teach the original M/W/F schedule for any period of time before it was fixed). Because Plaintiff has not alleged any change in the terms or conditions of her employment, or indeed any effect on those terms and conditions related to Defendants' actions, Plaintiff has not plausibly alleged that she suffered an adverse employment action related to her discrimination claim.

Because Plaintiff has not alleged facts sufficiently to plausibly suggest a timely adverse action, her Title VII discrimination claim must be dismissed.

### 2.    Retaliation

"[F]or a retaliation claim to survive a motion for judgment on the pleadings or motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) 'because' [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3[a]). In the retaliation

context, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega,* 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 [2006]).  Unlike discrimination claims, a retaliation claim requires that the retaliation was the but-for cause of the employer's adverse action, such that "'the adverse action would not have occurred in the absence of the retaliatory motive.'"  *Vega,* 801 F.3d at 90 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 [2d Cir. 2013]).  Moreover, a plaintiff need not allege that the retaliatory action was taken related to a protected characteristic, but rather that the retaliatory action was taken because he or she had engaged in a protected activity, such as reporting or opposing discrimination. *Vega,* 801 F.3d at 91.

It is not clear precisely what action Plaintiff alleges constitutes protected activity, given that she merely alleges in the Complaint that she was "subjected to retaliation for complaints of discrimination and a hostile work environment."[8]  (Dkt. No. 1, at ¶¶ 38, 42.)  She does not specify what those complaints involved or when they occurred.  (*See generally* Dkt. No. 1.)  Her NYSDHR complaint provides greater details, however.  Plaintiff does indeed include allegations there regarding complaints she made and actions that she believes were retaliatory; but the majority of those complaints and actions occurred more than 300 days prior to when she filed her complaint with the NYSDHR.  The latest such alleged complaint Plaintiff made occurred in

---

[8]      Notably, Plaintiff's allegations that appear to allege that she was retaliated against for requesting reasonable accommodations for her disability cannot be used to support her retaliation claim under Title VII because no reasonable person could believe that requesting disability accommodations was a complaint about a practice prohibited by Title VII, given that Title VII explicitly does not cover disability discrimination.

April 2022, when she alleges she provided a graph to a non-defendant employee of Defendant

SUNY Cortland[9] that demonstrated the inequality in course preparations and course assignments

that Plaintiff had dealt with for ten years.  (Dkt. No. 12, Attach. 3, at 8.)  There is no allegation

that this individual provided that graph to Foster in particular (who she alleges took subsequent

actions against her).  As to those actions, she alleges, as discussed above, that, (a) in August

2022, Foster omitted an activism award she had won from an annual report and assigned her to a

course she had stated previously she was not prepared to teach, (b) in August through December

2022, Foster emailed her about students who had reported she was not responding to their

requests for assistance and used those complaints to "pad [her] file with negative information,"

and (c) in December 2022, Foster made her justify her qualifications for a grant for which she

had already be approved when she asked him to sign a routine routing slip.  (*Id.* at 10-11.)

Plaintiff does also allege that her attorney sent a copy of the initial NYSDHR complaint to

Defendant SUNY Cortland "shortly after" October 17, 2022, and requested mediation.

    None of these detailed allegations suggest a timely complaint or other action that would

constitute a protected activity followed by an adverse action.  To the extent that her attorney

providing a preliminary copy of the NYSDHR complaint in order to prepare for mediation before

filing can constitute protected activity (given the fact that she included the same type of

information that was in the version of that complaint that was eventually filed), Plaintiff still has

not alleged facts plausibly suggesting that any actions taken thereafter were adverse employment

---

[9]    Plaintiff refers to this individual only as "Sielaff."  It is not clear from the context of her allegations who this individual was or what title or role he held at SUNY Cortland, other than that he seems to have acted as an intermediary between Plaintiff and Foster and Mattingly on occasion.

actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90.  The only action she alleges was taken by Defendants after October 17, 2022, is that Foster attempted to speak with her about why she was supposedly not responding to some of her students' requests for assistance and asserting she had a "performance problem." (Dkt. No. 12, Attach. 3, at 10-11.)  Apart from not rising to the level of an adverse action, the December 20, 2022, email that Plaintiff specifically references does not appear to have been causally related to her presentation of her preliminary complaint to Defendant SUNY Cortland, because (a) she has not indicated that Defendant Foster was even aware of her complaint, and (b) she indicates that he had begun sending her emails about this issue as early as August 2022. (*Id.*)  Lastly, to the extent Plaintiff alleges that a hostile work environment constitutes an adverse action, the Court finds that Plaintiff has not plausibly alleged the existence of a hostile work environment for the reasons discussed below.  Based on the allegations presented in the Complaint and Plaintiff's NYSDHR complaint, Plaintiff has not alleged facts to plausibly state a claim for retaliation pursuant to Title VII.

### 3.    Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege facts that meet both an objective and subjective standard.  Specifically, the misconduct alleged must be both (1) "'severe or pervasive enough to create an objectively hostile or abusive work environment,' that is, 'an environment that a reasonable person would find hostile or abusive,'" and (2) subjectively perceived by the plaintiff as being abusive. *Moll v. Telesector Research Gr., Inc.*, 94 F.4th 218, 228-29 (2d Cir. 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 [1993]).  Whether an environment is objectively hostile is determined by looking at all the circumstances, including

(a) the frequency of the discriminatory conduct, (b) its severity, (c) whether it is physically threatening or humiliating or a mere offensive utterance, and (d) whether it unreasonably interferes with the employee's work performance.  *Moll*, 94 F.4th at 229 (quoting *Harris,* 510 U.S. at 23).  Although hostile work environment claims based on sex need not involve sexually offensive acts and may be supported by facially sex-neutral acts, there still must be evidence suggesting that the actions are based on the sex of the plaintiff.  *Moll*, 94 F.4th at 229 (citing *Alfano v. Costello*, 294 F.3d 365, 375 [2d Cir. 2002]; *Raniola v. Bratton*, 243 F.3d 610, 617 & n.6 [2d Cir. 2001])

Unlike discrimination and retaliation claims, which involve discrete acts that individually can be considered actionable, hostile work environment claims have been found to be subject to the continuing violation doctrine "because the 'very nature' of a hostile environment claim 'involves repeated conduct,' and 'incidents that give rise to a hostile work environment can occur over a series of days or perhaps years and a single act of harassment may not be actionable on its own.'"  *King*, 96 F.4th at 559-60 (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259-60 [2d Cir. 2023]).  As a result, in terms of the application of the 300-day limitations period for Title VII claims, as long as an act contributing to the hostile environment claim occurs within the period, "the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period."  *King*, 96 F.4th at 560 (quoting *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 [2002]).  As a result, the Court is not limited to considering only conduct that occurred within the 300-day period from when Plaintiff filed the NYSDHR

complaint, but any conduct that is part of the pattern of alleged harassment, so long as she has alleged acts that are part of that pattern within the required time period.

Plaintiff alleges that she began working for Defendant SUNY Cortland in September 2002. (Dkt. No. 12, Attach. 3, at 11.) She also alleges a pattern of discriminatory and harassing conduct against her consisting of the following: (a) around January 2007, a witness at her promotion review deliberations complained to the administration that Plaintiff had been subjected to discrimination on the basis of sex and marital status during those proceedings, which resulted in backlash against her husband from other colleagues and an investigation that found no wrongdoing; (b) in Spring 2011, she requested reasonable accommodations under the ADA related to disabilities, which, as will be discussed below, were granted but not always honored; (c) in 2015 through 2016, Plaintiff alleges she felt "stigmatized" and that her colleagues in the Department were not "particularly forthcoming or welcoming," and that she reported to Mattingly that she was concerned "about potential resentment toward me [from her colleagues] because I could not volunteer for time-sensitive committees" due to her disabilities; (d) following another promotion review in 2018,[10] Plaintiff reported due process and other problems that she had encountered during peer-review for that promotion, particularly a violation of her right to confidentiality and influence of her disability status and need for accommodations on the proceedings, yet Defendants failed to conduct any investigation of the report and removed certain accommodations that she still required related to Department meetings; (e) during a meeting in April 2019 with the administration and Department of Psychology, Defendants failed

---

[10]    Plaintiff alleges that she was ultimately promoted to Professor of Psychology based on this review effective September 1, 2018. (Dkt. No. 12, Attach. 3, at 14.)

to stop or transcribe defamatory comments and personnel discussions that Plaintiff believed were about her; (f) in July and August of 2021, she had to intervene to receive her accommodations regarding class schedules (she required a stable T/Th schedule due to her disability) and was made to list courses she was no longer prepared to teach; (g) in October 2021, Defendant Prus counseled her and placed a counseling memorandum in her file related to emails she had sent to Foster and Mattingly related to the course assignment issues (which Plaintiff acknowledges were "uncharacteristically direct and I regretted some of my word choices"), and she had to attend meetings related to that counselling; (h) in October and November 2021, Defendants attempted to eliminate an independent study course that Plaintiff (and others, including at least one male professor) used for research students; (i) Plaintiff felt offended by a meme and some text Foster included in a November 2021 email that she believed was referring to her and her husband;[11] (j) she and her husband were both not provided meeting minutes (which were part of their ADA accommodations) and were excluded from certain emails within the Department; (k) in January 2022, Defendants notified of a new policy by which all faculty (except one who was also teaching at another college) were being placed on a rotating teaching schedule, which Plaintiff alleges was against her reasonable accommodations, and she was indeed placed on a M/W/F schedule rather than the T/Th schedule she required, although that was later amended to permit a T/Th schedule for the Fall 2022 semester; (l) Foster and Mattingly told Evans[12] that they wanted Plaintiff to resign from department-related service positions; (m) she would be required by the

[11]    The meme is not described but the text was "Unknown fact about me.  I hate pigeons.  I don't understand why anybody feeds an organism which contributes nothing to a metropolitan area other than poop and aggravation."  (Dkt. No. 12, Attach. 3, at 5.)

[12]    It is unclear what Evans' title or role was at SUNY Cortland.

25

terms of her Alternative Work Agreement proposed by Defendants to have a list of nine course
preparations despite the fact that two or three is "normative for faculty in the department"; (n) in
April 2022, she was still not consistently receiving meeting minutes as required and did not
receive the same information as other faculty; (o) in August, Foster omitted an award she had
won from the Department Annual Report, and she was again placed on a M/W/F course schedule
for Spring 2023 and was assigned to a course she had indicated she was not prepared to teach;
(p) Foster periodically emailed her from August through December 2022 about reports from
students that she was not replying to their requests for assistance and saying she had a
performance problem; and (q) Foster required her to justify her qualifications before he would
sign a routing slip related to disbursement of a grant she had already obtained.  (*See generally*
Dkt. No. 12, Attach. 3.)

The Court finds that these allegations do not plausibly suggest an objectively hostile
work environment.  Notably, although Plaintiff alleges that these actions "undermined" her job
performance, she does not indicate in what ways they interfered with her ability to perform her
work.  The alleged actions were not physically threatening, and, although Plaintiff does allege at
least one instance on which she felt humiliated by Defendants' revealing her disabilities and/or
accommodations to her colleagues, that appears to have been a fairly isolated occurrence, with
the only other allegations related to her feeling "stigmatized" and resented by her colleagues in
2015 and 2016, although she does not allege that any of those colleagues took actions against her
beyond seeming not "particularly forthcoming or welcoming."  (Dkt. No. 12, Attach. 3, at 13-
14.)   Further, incidents from 2019 and earlier were sporadic, and, although Plaintiff alleges a
number of incidents occurring particularly in 2021 and 2022, those are not of the severity that

26

has generally been found to sustain a claim for a hostile work environment.  Having to rectify an

erroneous course schedule on two occasions, needing to be prepared to teach more courses than

other professors, being excluded from certain emails, and receiving criticism or scrutiny from

persons in supervisory positions simply do not amount to a hostile work environment, even if

Plaintiff subjectively perceived them as being hostile and abusive.  *See Fleming v. MaxMara*

*USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (finding that allegations of wrongful exclusion

from meetings, excessive criticism of her work, refusal to answer work-related questions,

imposition of arbitrary duties, throwing books, and sending rude emails were insufficient to

show a hostile work environment).  For these reasons, Plaintiff has not alleged facts to plausibly

suggest that her work environment was objectively hostile or abusive.

Moreover, Plaintiff has not alleged facts to plausibly suggest that the various actions

Defendants allegedly took against her were on the basis of either her sex or her status as a

married woman.  *See Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d

Cir. 2014) ("'It is axiomatic that mistreatment at work, whether through subjection to a hostile

work environment or through [other means], is actionable under Title VII only when it occurs

because of an employee's . . . protected characteristic.'") (quoting *Brown v. Henderson*, 257 F.3d

246, 252 [2d Cir. 2001]).  Plaintiff does not allege any sexist or gender-related comments, nor

does she allege facts plausibly suggesting that male colleagues were treated more favorably.

Plaintiff includes facts about an email from Foster in August 2022 in which he stated he was

interested in gender diversity related to a new hire that had just been approved.  (Dkt. No. 12,

Attach. 3, at 10.)  Plaintiff indicates that she believes that "gender diversity" was Foster's way of

stating there were too many women in the Department, yet Plaintiff has not provided any

27

allegations regarding the sex of the other faculty members in the Department. (*Id.*) She notably alleges that the Department rehired a woman professor in December 2021 who had left the college in January 2020 to accept a position at another college. Moreover, in the sentence that follows her discussion of Mr. Foster's concerns about "gender diversity," Plaintiff undermines her own assertion that the discrimination she faced was based on her gender by stating that "Foster articulated that this new hire would be able to move into other classes, the 'flexibility like the rest of you enjoy' (which meant, *everyone except me*)." (*Id.* [emphasis added].) If the discrimination was based on sex, it is not clear why Plaintiff would be the only faculty member who was not provided with that flexibility given that she has alleged that some of the other faculty are also women.

As to sex-plus discrimination, Plaintiff alleges that, in raw notes from a Chair's Counsel meeting, Foster wrote that they would not be hiring any more married couples for faculty. (*Id.*) However, as discussed above, marital status alone is not a protected category under Title VII; rather, Plaintiff must allege that she was discriminated against as a *married woman* specifically. A decision not to hire married couples does not discriminate against only married women, but also against married men. Moreover, Plaintiff's allegations indicate that her husband was also treated in a similar manner as her related to failing to provide meeting minutes, engaging in prolonged negotiation of Alternate Work Agreements, issuing a counseling memorandum, and excluding from emails and meetings. (*See generally* Dkt. No. 12, Attach. 3.) The fact that Plaintiff's husband, a married man, suffered some of the same allegedly harassing conduct cuts against an inference that such conduct was motivated by Plaintiff's status as a married woman. Lastly, a policy to not hire married couples as faculty (as in, to hire both spouses together, as

28

Plaintiff and her husband were in 2002) does not plausibly suggest that Defendant SUNY

Cortland would refuse to hire an individual simply because they are married, and, again, does not

lead to an inference that such policy would discriminate against married women specifically.

For all of the above reasons, Plaintiff has not alleged facts to plausibly suggest any of her

claims pursuant to Title VII. Those claims are therefore dismissed.[13]

> **B.    Whether Plaintiff Should Be Permitted to Amend Her Complaint to Assert a
> Claim for Disability Discrimination, Retaliation, and/or Hostile Work
> Environment Under the ADA**

After careful consideration, the Court answers the above question in the negative for the

following reasons.

Plaintiff has generally requested that she be permitted to amend her Complaint if the

Court finds that the pleading of her claims is deficient. Although, as the Court discussed above,

Plaintiff did not plead any claim under the ADA in the Complaint, she does include allegations

that she was discriminated and/or retaliated against related to her disability and requests for

---

[13]    The Court also denies any request to amend the Complaint related to the Title VII claims because even a liberal construction of Plaintiff's Complaint and opposing memoranda of law do not suggest the existence of any additional facts (consistent with her Complaint) which would lead the Court to believe she can remedy the deficiencies noted in this Decision and Order related to those claims. In short, for the reasons stated more fully below in Part III.B. of this Decision and Order, the Court finds that the pleading defects in Plaintiff's claims are so substantive that an amendment is unlikely to be productive. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."). The Court notes, again, that, in determining whether she had plausibly stated those claims, it has considered the detailed recitation of events contained in the NYSDHR complaint, and Plaintiff has not suggested that she could assert additional facts that would permit her to state any plausible claim under Title VII.

certain accommodations.  Because amendment to assert an additional federal claim would affect

whether the Court has federal-question jurisdiction over Plaintiff's Complaint, the Court will

consider whether Plaintiff would be able to amend her Complaint to assert a claim under the

ADA.

As to any ADA claim Plaintiff might wish to assert against Defendant SUNY Cortland,

such a claim would be barred by the Eleventh Amendment.  *See Rella v. New York State Off. of*

*Mental Health*, 19-CV-0723, 2022 WL 179978, at *4 (N.D.N.Y. Jan. 20, 2022) (Mordue, J.)

("[T]he Supreme Court has held that Congress did not abrogate the States' sovereign immunity

by enacting Title I of the ADA.") (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531

U.S. 356, 374 [2001]); *accord Blair v. SUNY Univ. at Buffalo*, 17-CV-1217, 2020 WL 695870,

at *4 (W.D.N.Y. Feb. 11, 2020) (recognizing that "SUNY is an integral part of the government

of the State [of New York] and when it is sued the State is the real party").  Plaintiff has not

alleged any facts which would plausibly suggest that Defendant SUNY Cortland somehow

waived its immunity related to this claim.  As a result, any ADA claim for discrimination,

retaliation, or hostile work environment that Plaintiff would assert against Defendant SUNY

Cortland would be subject to dismissal based on sovereign immunity.

As to any ADA claim Plaintiff might wish to assert against Defendant Prus, the Second

Circuit has held that individual employees sued in their personal capacity cannot be held liable

under either Title I or Title V of the ADA.  *Yerdon v. Poitras*, 120 F.4th 1150, 1155-1157.

Plaintiff has here sued Defendant Prus in his personal capacity, and therefore she could not assert

a valid claim for discrimination, retaliation, or hostile work environment against him under the

ADA.  To the extent she might be permitted to amend the Complaint to assert ADA claims

against him in an official capacity, such claims would nonetheless fail for similar reasons as her

Title VII claims: she has not pled any qualifying (and timely) adverse action related to a

discrimination or retaliation claim or an objectively hostile pattern of conduct related to a hostile

work environment claim.[14]

 For these reasons, the Court denies Plaintiff's request to amend the Complaint to the

extent she would be seeking to assert any claim pursuant to the ADA.

  **C.** **Whether the State Law Claims Against Defendant SUNY Cortland Should Be Dismissed**

---

[14] Of note, related to her NYSDHR claim, Plaintiff discusses a number of new allegations related to conduct by Defendant Prus that she would intend to plead in amending the Complaint. (Dkt. No. 37, at 8-11.)  These allegations notably do not include anything occurring after July 19, 2022, and thus would have no bearing on the Court's analysis related to the existence of an adverse action for a discrimination or retaliation claim, given that ADA claims are also subject to the 300-day time limit.  *See Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999) (finding that ADA claim based on being denied a promotion was time-barred because the plaintiff filed his complaint with the EEOC more than 300 days after he should have known of the denial); *Mitchell v. Planned Parenthood of Greater New York, Inc.*, – F. Supp. 3d –, 2024 WL 3849192, at *6-7 (S.D.N.Y. Aug. 16, 2024) (finding that discrimination and retaliation claims, including under the ADA, were time-barred as to any discrete acts that took place more than 300 days before when the plaintiff filed a complaint with the EEOC).  The Court further finds that the new allegations would not change its finding related to the existence of a hostile work environment, because some of them, like the discussion of Defendant Prus' actions at a 2019 meeting, appear to merely add more detail to circumstances already alleged and considered (i.e., that Defendant Prus humiliated her at a meeting and allowed her ADA accommodations and disability status to become known to others).  She newly alleges that Defendant Prus accessed her email account in 2021 related to the eventual counseling memorandum.  (Dkt. No. 37, at 10.)  However, accessing her email (which the Court assumes was Plaintiff's work email address for SUNY Cortland) related to an investigation that, from other allegations, appeared to be at least partly prompted by an email Plaintiff sent reporting unfair work assignments that, as noted previously, according to Plaintiff, contained some language that she later regretted using.  Under the circumstance, this new allegation would not alter the Court's conclusion regarding the existence of a hostile work environment.

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' memorandum of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds, in its discretion, that it should exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendant SUNY Cortland in the interest of judicial economy, convenience, fairness, and comity. Defendant SUNY Cortland has argued that the NYSHRL, breach-of-contract, IIED, and negligence claims must be dismissed on the basis of sovereign immunity because SUNY Cortland is an agency of the State of New York. (Dkt. No 12, Attach. 1, at 23-27.) Plaintiff has conceded that sovereign immunity prevents her from pursuing these claims against Defendant SUNY Cortland. (Dkt. No. 21, at 12.) The Court agrees that these claims are barred in this federal action. *See Al-Shimary v. State Univ. of New York at Binghamton*, 22-CV-1282, 2023 WL 7128861, at *6 (N.D.N.Y. Oct. 30, 2023) (McAvoy, J.) (noting that SUNY enjoys sovereign immunity as a division of New York State, and that New York has not waived its immunity related to NYSHRL claims in federal court); *Fizulich v. Killings*, 22-CV-1190, 2023 WL 4643011, at *4 (N.D.N.Y. July 20, 2023) (Hurd, J.) (finding claim for breach of contract against SUNY Albany was barred by sovereign immunity because there was no indication New York State had consented to suit or waived its immunity as to such claim); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007) (finding sovereign immunity barred claims under the NYSHRL, IIED, and negligence); *Marsh-Godreau v. SUNY College at Potsdam*, 15-CV-0437, 2016 WL 1049004, at *3 (N.D.N.Y. Mar. 11, 2016) (Kahn, J.) (finding that "the Eleventh Amendment bars federal suits against state

officials on the basis of state law" when dismissing an IIED claim). There is no indication that New York State has waived its immunity related to any such claims.

For the above reasons, Plaintiff's state law claims against Defendant SUNY Cortland are dismissed on the basis of sovereign immunity. Given the significant uncertainty that exists regarding whether such dismissals should be with or without prejudice, the Court dismisses these claims only without prejudice to refiling in state court. *Mulhern Gas Co., Inc. v. Rodriguez*, 23-CV-1267, 2024 WL 3992588, at *7-8 (N.D.N.Y. Aug. 29, 2024) (Suddaby, J.).

### D. Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against Defendant Prus

After careful consideration, the Court answers the above question in the negative.

Under the circumstances, the Court is inclined to dismiss Plaintiff's remaining state law claims without prejudice to refiling in the appropriate state court within the applicable limitations period. *See Traylor v. Town of Waterford*, No. 24-691, 2024 WL 4615599, at *2 (2d Cir. Oct. 30, 2024) (finding that district court's dismissing state claims due to declining to exercise supplemental jurisdiction could not be construed as dismissing those claims with prejudice because a dismissal for lack of jurisdiction must be without prejudice) (citing Fed. R. Civ. P. 41[b] and *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 [2d Cir. 2022]).

Section 1367 of Title 28 of the United States Code permits a district court to decline to exercise supplemental jurisdiction for state law claims where, in relevant part, the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has recently stated that, in such a context "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. --, 2025

33

WL 96212, at *5 (2025) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 [1966]).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction."  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir 2006) (citation omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, Plaintiff's Complaint was filed on April 17, 2024, less than one year ago, and is currently still in the early stages of development.  The remaining claims against Defendant Prus (and the claims against Defendant SUNY Cortland that have been dismissed based on sovereign immunity rather than the merits and therefore could be reasserted in state court) relate solely to New York statutory, contract, and tort law.  Having considered the above factors, especially in a case such as this which is still in the pre-discovery motion-to-dismiss stage, the Court finds no compelling reason to exercise supplemental jurisdiction over the remaining state-law claims.

**ACCORDINGLY**, it is

**ORDERED** that Defendant SUNY Cortland's motion to dismiss Plaintiff's Complaint for failure to state a claim (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant Prus' motion to dismiss Plaintiff's Complaint for failure to state a claim (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims pursuant to Title VII are **DISMISSED** **with prejudice**; and it is further

34

**ORDERED** that Plaintiff's state law claims are **DISMISSED** **without prejudice** to refiling in state court within the applicable limitations periods; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 25, 2025
　　　　Syracuse, New York


Glenn T. Suddaby
U.S. District Judge